May it please the Court, good afternoon. John Prezell on behalf of Plaintiff's Appellants the Randles. This is a first party insurance claim. There are two issues in this case, two main issues. The first being whether payment of an appraisal award establishes an estoppel defense as a matter of law in this case and the second being whether payment of the appraisal award justifies a summary judgment on the Texas Prompt Payment of Claims Act claim. Under the facts presented in this case, the insurance payment of the appraisal award does not establish as a matter of law the affirmative defense of estoppel for three reasons. The first is that at the outset of this case, the insurance company breached the appraisal clause that they now invoke to justify their affirmative defense and they now invoke that to gain tactical advantage. The second reason that the payment of the appraisal award does not amount to estoppel as a matter of law under these facts is that the plaintiffs did not only allege that the insurance company underpaid, they allege that there was underpayment. What additional damages could you possibly have? Your clients have been paid over a half million dollars, have they not? They have been paid but in getting there, they have had to go through litigation, they've had to go through appraisal, they were never told that the breach of contract, what is the precise breach of contract that your clients claim? Well, their failure to investigate the claim that led to denial of coverage. Second, that the Randles were then required to go through the litigation process, hire experts. The third one is that the difference in the amount based on the breach by not investigating. They've been paid over $500,000, have they not at this point? They have been paid but they've also had to spend a lot of money and a lot of time to get to the point where they've been paid. I just didn't understand what kind of breach of contract you're talking about because I thought that the Texas insurance code had various remedies for failures to investigate or non-coverage, frivolous non-coverage and things like that. Well, the duty to investigate is incorporated into every contract under Texas law. Every contract for insurance includes those Texas insurance code provisions for duties to reasonably investigate. Here, the insurance company denied the coverage. The insurance company knew that the Randles disputed that denial and the basis of that denial before they made their coverage decision and sent it to the Randles. The insurance company then didn't go out to re-inspect for six months and then they didn't hire a forensic investigator to investigate the smoke damage until another six months had passed. It had been a year since the the insurance company hired and had an inspection by a forensic examiner. By that time, there was a duty to mitigate at some point, right? The duty to mitigate was the basis of the insurance company's statement that there was no more coverage than they initially found at their initial single investigation of the property and the duty to mitigate is a limitation of coverage and a limitation of coverage is for the insurance company. That's their burden to prove that it applies and they were saying that you have all the coverage you get and appraisal, they wouldn't, the appraisal clause required them to and they gave their basis for doing that as being there is no more coverage. The appraisal only addresses pricing issues. Right, but the appraisal, the appraisal happens. The insurance company pays the appraisal award. You accept it under the full damages you claimed for property loss. So why, I mean, under cases like Ortiz from the Texas Supreme Court, it says payment and acceptance of an appraisal award ends a breach of contract claim and all these issues you're talking about about delay, why aren't they just all part of the prompt payment claim that you also have? Right, with the, your honor's question about the cases like Ortiz, that was a case where the insurance company invoked appraisal. Other cases where an appraisal has been paid, the insurance company didn't say appraisal was inappropriate. Both parties went to appraisal. Right, because you can agree to appraisal and still fight for years even after the appraisal. The insurance company, I'm sorry, I know it's hard with this glass, you can go to appraisal and they come out with a number and the insurance company can still fight for years in court saying there's no liability. So it's not the appraisal itself that's the issue, but Ortiz says once the insurance company pays an appraisal award, then it's the end of a breach of contract claim unless they can pay the award and put a disclaimer saying we still are fighting liability, we're just doing this to stop interest from accruing. And I didn't see that here. Normally a payment of the appraisal award ends the breach of contract claim unless the insurance company says we're just doing this but we still reserve our right to fight liability. The insurance company in this case has not admitted liability. Why isn't payment of the award admitting liability? They actually, when they submitted that, it was with a reservation of rights. Well then they would be the ones wanting to keep on fighting breach of contract because if they win they get their money back, some of the money. Well this goes to the issue of does payment of appraisal award foreclose any breach of contract? And the distinction in a case like Ortiz, other than that the insurance company invoked it, but the other major distinction was that the dispute in Ortiz was something that appraisal could resolve. So there's a footnote in Barber Technologies which is also recent, 2019, and it says there's three options when an appraisal award happens. They can refuse to pay the appraisal amount, continue to fight liability. That didn't happen here, right, because they did pay the amount. Or they can pay the amount without accepting liability. That's when they put a disclaimer on there. Or three, they can just pay the claim without a disclaimer which means it's all over on breach of contract. What happened here? They paid the amount but did not admit liability. And Barber Tech was addressing the Prompt Payment of Claims Act, distinguishing, distinguished from the contract. They almost paid the entire policy limits. They're asking for some sort of breach of contract damages in addition to the policy limits. Well we are because they, we had to file suit because of our statute of limitations. I don't understand why your client fired the Blackman-Mooring right after they started work. I mean, you know, this just doesn't seem, well, I reserve judgment on whether Estoppel is the proper way to have disposed of this but it just doesn't make, it doesn't make sense that your within a couple of weeks of Blackman-Mooring handling that claim, they fired Blackman-Mooring because they disagreed with Blackman-Mooring's decision to not tear out all drywall. And there were a lot of repairs that Blackman-Mooring did not think were appropriate. Blackman-Mooring was going to wipe down some walls rather than tear them out. The Randalls disputed that. They told, the insurance company was aware of that dispute because the insurance company, I'm sorry, Blackman-Mooring rep told the adjuster on this case that they disagree with our decision. I'm not really trying to get you off on a tangent about the facts. I'm just saying that if your theory of breach of contract is that they made, that travelers strung them along and didn't pay them what was owed, there will be an answer to that if you were to get to trial. I'm just saying that the issue there, it was a Hale claim and the issue, the dispute was the insurance company said, well, some of this is Hale, but some of it is wear and tear. And the Texas Supreme Court in Johnson said, well, it's wear and tear is an issue in every case and appraisers can address that issue. So it's appropriate. So there was no, that once, that was something that was appropriate for appraisal. Here and Johnson, well, but here, it was a coverage determination and travelers made it clear that this is a coverage issue, it's not appropriate for appraisal, but the Texas Supreme Court in Johnson also said that whether or not the parties agree about that, if one invokes it, have the appraisal, get the number, and then go to court to litigate. Right, you can keep litigating, but if you pay the appraisal award, it's game over. Anyway, you're running out of time, why not talk about your prompt payment claim, which I don't think, the court below didn't find was a stop, it's just that you couldn't prevail under the Fifth Circuit decision in Manali, which I actually wrote, but now there's a Supreme Court case from Texas out this year that at least disagrees with some of the reasoning there. Well, in the, Mr. Frazier brought this to the court's attention, and that was very, it was after the briefing in this case, Texas Supreme Court has ruled that it's the insurance company's burden to push the appraisal process along, early partial payment is credit towards any ultimate appraisal award that they decide is owed and that they pay, but that there are only two elements to the Prompt Payment of Claims Act, one being that it's covered, and the other being that they didn't timely pay, and here, because the insurance company hasn't admitted coverage or been adjudicated to be liable for the claim, there is a fact issue about coverage. But I mean, I read the other side in their 28J, I mean, they're basically conceding that the reasonableness defense no longer works under the new Texas Supreme Court case decision, and I guess then they're saying you didn't show that it was untimely? When would it have had to have been paid? When did the sixty-day time limit kick in? For the property . . . Right, I'm talking property. That's our main case here. That kicked in once the plaintiffs notified travelers that they disputed the coverage decision, and travelers stuck with that coverage decision and issued their coverage termination immediately, although they knew the dispute, and they did not come out and re-inspect the property. They only inspected the property one time. I thought the Prompt Payment Act was determined on being sixty days after the insurance company has been furnished all the requisite information about costs. In Barbaratech, the Barbaratech court said that the insurance company's statement of here's our coverage termination, that indicates for purposes of the Texas Prompt Payment and Claims Act that their investigation is complete. They don't need any additional information, and the appraisal process does not supplement that information gathering process. Their investigation is complete upon sending their letter to the insurer saying it's their coverage termination. Their investigation is complete for purposes of the Prompt Payment and Claims Act, and the insurance company here never sends a letter saying we need additional time. They only conducted their one inspection and did not come back out for another six months, and so our argument is it's unreasonable, and a breach of contract exists because of the duty to investigate led to these damages for non-payment a substantial amount, and as the Ortiz Court said, that the Prompt Payment and Claims will apply, but it doesn't mean apply, the payment of the appraisal award will bar the breach of contract unless there's an allegation of failure to investigate, and here we had evidence of a lack of investigation when they knew that there was a dispute. All right, thank you, sir. Okay, Mr. Craven. Good afternoon. May it please the Court, it's good to finally be in front of you in person today for having this. I will address the breach of contract claim first and then hopefully spend the balance of my time on the prompt pay claim in light of the Inehos versus State Farm decision. One of the cases discussed in the brief that your friend on the other side didn't get to was universal underwriters, and I don't know if that was primarily discussed in your brief or in the other side's brief from 2011. It is dealing with the in evoking the appraisal provision of the contract and whether that weighs whatever protections would come under that. Would you address that, and do you agree that the appraisal itself still, we must evaluate either because of that case or otherwise, whether there was, at least that's an issue that either hasn't been properly raised here or needs to be discussed, that there could be delay that would prevent your appraisal protection? I'd be glad to, Your Honor. First of all, the universal underwriters case talks about an insurer's conduct that waives its right to invoke appraisal. In this case, Your Honor, the plaintiffs, insurers invoke appraisal, and the estoppel effect comes with the timely payment of the award, and there is no case holding that preappraisal conduct vitiates the estoppel effect of timely payment of the appraisal award and acceptance. Now here, in the, well, I'll say this, Your Honor, in Ortiz, which has been discussed. Well, let me ask you before you leave universal. It is correct, obviously, invoke appraisal here. Are you saying universal underwriters doesn't apply if it is the insured who invokes appraisal? I'm saying, Your Honor, that universal underwriters does not apply to the issues before the court. The issue there was whether an insurer waived the right to resolve the amount of the claim by appraisal by its delay. Well, I didn't read the opinion, at least it seems to me one way to read the opinion. Obviously, either side can invoke it at any appropriate time, and so the insurer in universal underwriters did not invoke it himself, and I don't know if eight months was somehow that time frame comes to mind of the process going on, and so it seems to me that regardless of who invokes it, there's still an issue of whether the insurance company waited too long itself to cut off this whole process, and you have a potential breach of contract. Here's a distinction, Your Honor, that payment, as Justice Costa said, once, regardless of what happens beforehand, that once an insurer pays appraisal award and it's accepted, the breach of contract claim is precluded from advancing, regardless of the pre-appraisal conduct. The pre-appraisal conduct in universal just said, you can't even have appraisal, and then they went up and addressed the denial of appraisal on that basis. Here, that wasn't the issue. The appraisal was requested by the plaintiffs, but in Ortiz, the insurer denied the that prevented the estoppel effect of State Farm's payment of the appraisal award in Ortiz when it wrongly denied the claim. It denied the claim. We don't owe another claim. The appraisers disagreed. It told me pay the appraisal award, and the Supreme Court text has held that that payment and acceptance concluded the contract claim. Well, I'm sure you like the final step and what Universal Underwriters has in its analysis, but I'm just concerned about whether we ignore it altogether. As I take it, you may be saying delay in invoking appraisal can constitute a waiver, and you measure delay from the point of impasse. The next factor or consideration says delay alone is not enough. A parting must show prejudice, which is getting to what Judge Jones, I think, to some extent has been asking your friend on the other side. And the final statement the Court makes on prejudice, it is difficult to see how prejudice could ever be shown when both sides have the right to invoke appraisal and the appraisal amount has been fully paid. But you're saying we don't even get into that because of? Well, because it's not—the basis for the summary judgment is not impacted at all on travelers' pre-appraisal conduct. Once they've paid the appraisal award and accepted, Universal Underwriters says that insurer, you need to go to trial. You can't resolve this by appraisal because you delayed in invoking it, but you're right, Judge Southwick, the additional burden is for the insured to show prejudice by delay. There was not even an attempt to show prejudice. There was no prejudice because, as Judge Jones has said, we paid nearly, nearly the policy limits. And on the day that we received notice of the claim, the very day, we showed up, we investigated, and we paid $10,000 advance. We asked for documents, we met with the construction person, and there we went. And they provided documents. A few weeks later, we issued payments. Travelers issued no less than 11 payments over the course of this claim, made five requests for additional information, and on top of that, made two reminders to the insurers and their adjuster, please send us more information. We're waiting on it. Would a contract claim be the same? Let's forget a case with appraisal. Get out of insurance. Someone sues me saying I breached a contract for $100,000. And I say, ah, no, I'm going to fight you in court. But then I say, you know what? I'm just going to write you a check for $100,000. And the plaintiff accepts it. That would end the breach of contract claim, right? I mean, if they accepted the full amount of their claim. So, I mean, really, I don't know if it's turns on appraisal, just as the full amount requested was paid and accepted. That is correct. And, Your Honor, the two grounds for the contract claim, the first one was, is that the travelers paid the appraisal board in all loss of use benefits out of a policy. The plaintiffs did not raise a fact issue on whether they were fully compensated. They were, in fact, fully compensated. They do not point to $1 in this record that they are owed. And so, when all the policy benefits are paid and accepted, there is no breach. They have not alleged any consequential damages outside of the policy benefits from any purported breach. So, there was nothing else. The breach of contract claim, Your Honors, is pretty clear cut. There is no evidence that travelers owes any amount under the policy. There was no evidence that the insurers have been damaged for any amount that were outside or inside the policy, for that matter. Is there any appellate Texas court opinion dealing with appraisals? I see the earliest site is in the 1890s or something like that, to the appraisal process under Texas insurance policies. Is there any case in which the appraisal occurred, regardless of timing, whatever else, the appraisal occurred, the full amount was paid by the insurance company, where there still was found to be a breach of contract? If the appraisal board was timely paid and accepted, I know the recent jurisprudence, I think from maybe Johnson onward, put in bold print in Barber Technologies, Ortiz, and Alvarez, but I don't know any case, Your Honor, involving appraisal where the payment was timely made and accepted that did not result in a stop. And the Supreme Court went into that history in Ortiz and some in Barber Technologies, but mainly Ortiz, because the insurer denied the claim. So, and that's the reason, if you go to Exhibit 1 briefly in the bench exhibits I provided, here's another answer, Judge Southwick, and that is the appraisal provision, as you'll see, it says the appraisers, when they set the amount of the loss, that will be binding on you and us. And the Texas courts have construed this payment appraisal, a stop on a breach of contract claim, as a matter of contract law. They have agreed, as have travelers, to be bound by whatever the appraisal board is. And when we paid that, tendered that amount, actually, then we've completed and complied with our duties under the contract. Mr. Frazier, am I not, am I not correct that the plaintiffs are limiting their breach of, contrary to what Mr. Frizzell said a minute ago, they're limiting loss of use? Well, they may, they may be doing that, as in the argument, but in their brief it's, it's, it's even broader, or at least it's hard to determine, but that's why, if you look at Exhibit 1, this claim, which makes this claim unique and different from Hinojos and some other cases, is that there were three aspects to this claim, Your Honors. The dwelling, the house, the contents, personal property, and then loss of use. And I provide the definition of the loss of use coverage for Your Honors, because it is a little bit different. It's basically additional living expenses. That's a synonym for loss of use. In other words, additional living expenses, we have to move out of our house, we have to rent a house while it's being repaired, and we have other expenses. There was a separate coverage provision and separate coverage limits for these additional living expenses. There are limits for the personal property contents of the house, and there are limits to the actual damage to the dwelling. This claim involved all three, and it appears that their argument is that when there was a dispute about the loss of use portion, that that somehow was a breach, but the plaintiffs have not alleged or pointed to what loss of use damages were they not paid. Travelers made four loss of use, or additional living expenses, payments. And when you add them up, they actually exceed the policy limits. The travelers went ahead and did that, and so there is no breach there. We paid the limits, and they have not claimed any damage in or outside the policy benefits. But why don't we move, I mean, unless my colleagues have other questions, why don't you move on to the Trump payment claim? Yes, Your Honor, I . . . And can I, on that, can I ask, first of all, I commend you because the 28-J, you cited some authority that you seem to acknowledge, counsels against you in some way. It does. So point one of your 28-J letter, you say, look, the Hinojosa opinion no longer gives us a defense just that we paid a reasonable amount given how far away it was from the ultimate amount. The pre-appraisal amount, pre-appraisal amounts, the reasonableness, is no longer a defense. Right. So, but then I'm a little confused, you say, you make a point two and say we still can win or affirm the summary judgment because of point two, but I guess I'm a little confused if you can flesh that out for me. I thought the whole point of the prompt payment act is if within the 60 days, once that's triggered, you don't pay, you know, if someone's, it turns out someone's owed $300,000 and you only pay $100,000 within the 60 days, I thought there's something wrong with that. I mean, you're saying that the district court found another reason there wouldn't be liability aside from Manali. Yes. All right. If I may, let me start with Barber Technologies. Barber Technologies and Ortiz and Alvarez, they were issued before the summary judgment proceedings in this case, party-sided in those cases. In Barber Technologies, additionally, we talk about the 60-day time period. This is critical and this is why, Your Honor, on bench exhibit two, the second provision from the insurance code 055 is critical, 055B. The Supreme Court in Texas held in Barber Technologies and I quote, additional prompt pay deadlines are triggered when the insurer receives all items requested to secure final proof of loss, whether the insurer receives this information in response to its initial request or in response to additional requests. That's on page 812 of Barber Technologies' decision. So, to answer your question, Judge Costa, when did the 60 days time period begin to run? It began to run really on day one, but we, travelers, made five requests for additional information throughout the claim process. Plaintiffs have not argued or challenged their timeliness or their reasonableness of those requests. And they never responded. So, you're saying that the 60-day period's never? Well, no. Well, once we received, because the Supreme Court in Barber Technologies says the deadlines are triggered when the insurer receives all items, of course, in response to a timely request, which has not been contested. All right. When did travelers receive the final information necessary to determine the full amount of the claim? And that was in January of 2020, three months, four months after the appraisal award, and this was cited in the district court's opinion. We paid that claim, the part of the loss of use, within eight days. We had 60, but we paid it within eight. So, the district court found that when, and I'll quote, when reviewing all of the evidence, it supports the conclusion that travelers complied with the Pompeii Act by responding to the claim, by requesting all items necessary, by investigating the claim, evaluating it, acknowledging on the day that it got notice, and reaching a decision on the claim. Further, the court said, the plaintiffs have not raised a genuine issue of material fact concerning travelers' compliance with the Act, and the plaintiffs have not directed the court to evidence otherwise. And as an example of compliance with the Act, the district court, on page 949 of the record, Your Honors, that's in record . . . Yeah, that's right. That's why I'm a little confused, because it has this A and B, and I'm looking at B on the property damage. Yes, that's the A. A talks about loss of use, and it's just a little confusing what the district court held. It seems like he's mainly talking about Manali on the property damage paragraph. Well, on page 949 of the record, in the grand opinion, I'm right there, the district court talks about, it mentions, the final loss of use payment of $22,000 on January 23rd, 8 days after receiving the additional documents. As an example, it says, notably, travelers paid the plaintiffs an additional $22,000, and that was for the loss of use. Right, I see that on loss of use, but then he goes to property damage, and he says Manali, which is the reasonableness. Yes, that's the reasonableness of the pre-appraisal payments, which is no longer valid. Right. But you can affirm, Your Honors, notwithstanding Hinojos, because the record established compliance with the statute deadlines, and the district court held there was no fact issue, and the plaintiffs have not contended in the trial court or in this case, the district court. I think you asked for more information, and they didn't give it until much later on. Yes, we had to remind them, but if you look in the record, it's replete with, and the purpose of the Prompt Pay Act, of course, is to encourage the prompt payment of claims. We paid $10,000 on the day of the notice, and there was not one bit in the record where we paid untimely after receiving the information that we had requested, and that's why. Was that sufficiently put before, that argument, sufficiently before the district court for it to rule on summary judgment, or is it something that, if we might have to amend? Well, it was put before. I sort of see it in your brief. You know, it was put before the district court, and I can give you the actual page number, but when you look at our motion for summary judgment, and on page two, I'm sorry, 169 of, I'm sorry, 273 of the record, you will see that, you know, I'm sorry, 174 of the record. I apologize. Travelers complied with the statutory prompt payment requirements under the Prompt Pay Act. Acknowledge receipt of the claim and began its acceptance or rejection of the claim within 15 business days of receiving all information required to secure final proof of loss and issue payment within five business days after the notice of the acceptance and issued a payment within the statutory 60-day deadline, page 174 in our motion for summary judgment. So, yes, Your Honor, it was plainly put before the district court. The district court's memo almost quotes that language and says it is established by all the district courts. So, yes, Your Honor, it was put before the district court, and I apologize for going over. Thank you, Your Honor. I'll ask our presider to let me ask him one more question. Yes, sir. Maybe this is all caught up in the statutory language about an insurer after receiving all items, statements, and forms reasonably requested. It seems to me what you have proposed here, there's an opportunity for insurance companies after a long delay where the Prompt Payment Act interest is running just to ask for a little bit more information and then pay 60 days after that. What keeps that from happening? The statute itself in the case is interpreting it. The request, as it says in the statute, has to be reasonable. Okay, that's fine. Items that are reasonably necessary. Thank you. I wanted to, based on the questioning, I did want to clarify an issue about the breach of contract claims that were pending in the district court. There was the breach of contract for the second unpaid denied coverage was the additional living expenses. And the additional living expenses were not submitted to appraisal, so they were not resolved through the appraisal process. So even if appraisal were . . . I don't understand that claim at all because they started making living expense payments fairly promptly and they continued to make them, and apparently your client never really objected to that until they filed suit. So what additional living expenses would your client claim? Well, they would claim, and they have claimed, and they have now been paid through the amount that they spent that flowed from that time. But they were accruing at an extra basis, so I'm not quite sure how the prompt payment statute applies when living expenses are accruing and paid, and paid more than the policy. Right. Here, our position on that really is more for the breach of contract. I don't think that's our prompt payment. Okay. I haven't been focused on that as the prompt payment. Well, maybe I got confused. What about his argument on prompt payment that your client didn't respond to these requests for more material? Okay. Well, and that goes to our argument that they failed to investigate the claim, which under Ortiz is an exception to payment of an appraisal award as a stop on offense to breach a contract. And here, they went to the home once. They knew the dispute that the Randalls had, and they kept sending letters saying, oh, give us information. They knew the dispute, and it's the insurance company's duty to investigate. They knew what the dispute was, and they did not go back out to the home for six months, and that was only after the Randalls hired a public adjuster who charges 10 percent of insurance. But I understand that. Okay. But you're saying that's about a stop. Well, I'm asking about prompt payment. He's saying even though the New Texas Supreme Court case does away with the district court's argument that they paid a reasonable amount even though it was low, he says he still wins because the 60 days didn't start when you say, because they asked for more information, you didn't provide it. So they were under no payment obligation. Tell me why that's wrong if you think it's wrong or if you agree. That goes back to the discussion we had earlier about in Barber Tech, the Texas Supreme Court said when the insurance company says this is your payment, that for purposes of the Texas Prompt Payment of Claims Act is saying our investigation is complete. We do not need any more information from you. Right. But do you agree they asked for more information that you never provided until, I guess, the appraisal process? They provided it in January. July 4th was the fire. I believe in January they gave the PA's estimate and the went out to look at the home the second time. And your Honor's question was? Did they ask for information and your client never sent it? I mean, it's a pretty basic question. Oh, well, the client did send information, the forensic report, but it did take them time to get the forensic report. So he did send it, I believe, in January. Let me ask this question. Are all records in the summary judgment record? I mean, it seems to me he says pretty plainly they argued that based on their request and the timing of your client's responses, the prompt payment was not triggered until, he said, January of 2020. And we can easily review that from a record. I believe the information was in the record and I believe the district court referenced. I believe. So do you agree? Can I ask one more question? Do you agree with him that January 2020, it wasn't until then that the prompt payment clock requirement was triggered for a payment? We disagree with that. And why? Under Barber Tech, because Barber Tech said that for prompt payment of penalty, prompt payment claims act, their coverage decision says we don't need any more information. This is our coverage decision. Our investigation is complete. We don't need any more information. So that's why even though they kept asking for it, it doesn't toll the district. I don't know that I did. I don't think I did. All right. Thank you very much.